**SIGNED this 22nd day of August, 2022**

*Shelley D. Rucker*
Shelley D. Rucker
CHIEF UNITED STATES BANKRUPTCY JUDGE

_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| **In re:** | |
| **Bradley Keith Patterson,** | No. 1:22-bk-10611-SDR |
| Debtor. | Chapter 7 |
| | |
| **Believe Production, Inc.,** | |
| Plaintiff, | |
| v. | Adv. No. 1:22-ap-01014-SDR |
| **Bradley Keith Patterson,** | |
| Defendant. | |

## MEMORANDUM OPINION

### I.  INTRODUCTION

Plaintiff Believe Productions, Inc. ("Believe") contracted with Cloverleaf Fundraising, LLC ("Cloverleaf") and its sole member, defendant Bradley Patterson ("Patterson"), to find clients for its wholesale fundraising merchandise.  Patterson, who also is the debtor in Main Case No. 1:22-bk-10611-SDR (the "Main Case"), found clients and sold them merchandise but failed to deliver the proceeds to Believe.  A state court in Colorado determined that Patterson intentionally

kept the sales proceeds and committed theft. Now that Patterson has filed the Main Case, Believe commenced this adversary proceeding to have the debt that Patterson owes it declared nondischargeable under 11 U.S.C. §§ 523(a)(2)(A), 523(a)(6), and 727.

Pending before the Court is Patterson's amended motion to dismiss Believe's adversary complaint under Civil Rule 12(b)(6), made applicable by Bankruptcy Rule 7012(b). (Doc. No. 10.) Patterson argues for dismissal on the basis that Believe's complaint fails to plead the required elements under Sections 523(a)(2)(A), 523(a)(6), and 727. Patterson's argument rests on the structure of Believe's complaint—a short complaint that attaches and refers extensively to the judgment that Believe obtained in Colorado. Believe opposes the motion because the Colorado judgment included specific findings of fact about Patterson's intent and his intentional conversion of Believe's sales proceeds. Believe effectively is arguing that it has made the Colorado judgment integral to its complaint, which would mean that the findings in the judgment are equivalent to assertions that Believe could have pled directly.

The Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334. This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (I). Consistent with *Stern v. Marshall*, 564 U.S. 462 (2011), the parties implicitly have consented to final judgment by filing papers under Civil Rule 12 in connection with a motion that potentially requires dispositive rulings. *See also The Strauss Co., Inc. v. Jarrett Builders, Inc. (In re Strauss Co., Inc.)*, No. 1:18-BK-12972-SDR, 2021 WL 4436159, at *4 (Bankr. E.D. Tenn. Sept. 27, 2021). The Court has decided that the motion papers are sufficient without the need for oral argument. For the reasons below, the Court will grant Patterson's motion in part with respect to Believe's objection to discharge under Section 727. An introductory paragraph in the complaint refers to

2

Section 727, but neither the counts in the complaint, the demand for relief, nor the state-court judgment attached to the complaint allege actions that would support a denial of discharge under that section. The Court will deny Patterson's motion with respect to nondischargeability under Sections 523(a)(2)(A) and 523(a)(6) for the reasons given below.

## II. BACKGROUND[1]

This adversary proceeding concerns allegations that Patterson defrauded Believe of sales proceeds generated through fundraising campaigns with three schools. Believe is a Colorado corporation that specializes in furnishing schools, churches, and other nonprofit organizations with wholesale merchandise that the organizations then sell, with a markup, to raise money. Patterson is the sole member of Cloverleaf, a Tennessee limited liability company. At an unspecified time, but no later than August 2013, Believe hired Patterson and Cloverleaf as an independent sales representative. The record does not contain the terms of the relationship between Believe and Patterson / Cloverleaf, but in the fall of 2013, Patterson / Cloverleaf generated the following fundraising sales on behalf of Believe:[2]

> August 2013: A sale of 200 cases of pretzel rods to Woodland Middle School at $104.00 per case, for a total charge of $20,800.00.
>
> October 2013: A sale of 150 cases of pretzel rods to Chatsworth Elementary School at $114.40 per case, for a total charge of $17,135.00.[3]
>
> October 2013: A sale of 150 cases of pretzel rods to Pleasant Grove Elementary School at $114.40 per case, for a total charge of $17,135.00.

---

[1] For the sake of brevity and consistent with Civil Rule 12, the Court will refrain from repeated use of the words "alleged" or "allegedly." Nothing in this Background section constitutes a finding of fact unless otherwise noted.

[2] The record does not state explicitly whether these three sales were the only sales that Patterson or Cloverleaf ever generated for Believe. This ambiguity does not affect the Court's analysis but is noted for the sake of the record.

[3] For the sake of the record, 150 cases at $114.40 per case, with no discounts applied, would equal $17,160.00.

3

(Doc. No. 1-1 at 4.) Each school in early 2014 paid Patterson on behalf of Cloverleaf; the payments totaled $55,135.00 and belonged entirely to Believe.[4] (*Id.* at 5.)

Problems arose when Patterson failed to remit the sales proceeds from the three schools to Believe. Patterson never even told Believe that the sales occurred and that he received full payment from the schools; Believe found out only when it learned of the payments from the schools themselves. (*Id.* at 4.) Believe then asked Patterson about the sales proceeds; he admitted that the proceeds belonged to Believe but never transferred them despite Believe's request that he do so. On December 8, 2014, Believe sued Cloverleaf and Patterson in Colorado state court to recover the sales proceeds. Cloverleaf and Patterson never answered the complaint or responded to a motion for default judgment. The parties disagree over whether service was proper, but the state court found it to be proper. The state court held an evidentiary hearing on the motion for default judgment; at the hearing, the state court received both an offer of proof from counsel and live testimony from officers of Believe. Patterson did not appear. On April 13, 2015, the state court issued an order and judgment that contained the following findings of fact and conclusions of law:

    a)    Cloverleaf knowingly retained and exercised control over $55,135.00 paid by the Schools, belonging to Believe.

    b)    As evidenced by the fact that Cloverleaf and Patterson attempted to conceal the payments by the schools and then refused to provide Believe with the funds when Believe inquired about the same, Cloverleaf and Patterson intended to deprive Believe of the $55,135.00 permanently.

    c)    Cloverleaf and Patterson's actions with regard to the $55,135.00 amount to

---

[4] The Court makes two additional observations for the sake of the record. First, the sales listed above ($20,800.00; $17,135.00; $17,135.00) would total $55,070.00. Applying the correction in footnote 4 would lead to a total of $55,120.00. Second, the assertion that the entirety of the sales proceeds belonged to Believe implies that Believe would pay Cloverleaf for its services in some other way under the terms of the relationship.

4

   theft under C.R.S. § 18-4-401.

d)  Believe is entitled to recover treble damages under C.R.S. § 18-4-405. Thus, this Court finds that Believe is entitled to additional damages of $110,270, for a total of $165,405.

e)  Believe is entitled to recover its attorneys' fees and costs pursuant to C.R.S. § 18-4-405 and the Believe Representative Agreement.

f)  Believe has incurred $13,069.50 in attorneys' fees through April 8, 2015 to recover its stolen funds. Exhibit 1 includes a detailed breakdown, including invoices, showing how these fees were incurred. Exhibit 1A provides a summary of each invoice as well as work that has not yet been billed. Exhibit 1B replaces the last page in Exhibit 1; it provides a detailed breakdown of the fees that have not yet been billed, including those fees incurred on April 8, 2015, which were not finalized as of the time of the hearing. Exhibit 1C replaces Exhibit 1A and includes the fees incurred on April 8, 2015.

g)  Believe has incurred $178.02 in attorneys' fees[5] through April 8, 2015 to recover its stolen funds.

h)  The attorney fees and costs are reasonable given the complexity of the matter, experience of Believe's attorneys, the Denver marketplace, and work that was completed to pursue the action.

i)  Absent an agreement setting an alternate interest rate, Believe is entitled to pre-judgment interest of 8% per annum. This amounts to $6,498.98 through April 8, 2015.

j)  Pursuant to C.R.S. § 5-12-101, Believe is entitled to post-judgment interest at a rate of 8% per annum on its judgment.

k)  Because Patterson, on behalf of Cloverleaf, possessed the funds, the Court finds that he is also personally liable to Believe for its damages.

(Doc. No. 1-1 at 5.) The final judgment was in the amount of $185,151.50 plus post-judgment interest at 8% per year. (*Id.* at 6.) Neither Cloverleaf nor Patterson ever appealed the judgment; they also have not paid any part of it.

---

[5] The word "costs" likely was intended.

Patterson individually commenced the Main Case by filing a voluntary Chapter 7 petition on March 21, 2022. (Main Case, Doc. No. 1.) Patterson listed Believe as a creditor in Schedule E/F, but despite the existence of the Colorado judgment and its domestication as a Tennessee judgment, he listed the amount of the debt as "Unknown" and classified the debt as "Other" with no further information given. (Main Case, Doc. No. 16 at 2.) Believe filed Amended Claim 2 on May 3, 2022, asserting a balance of $375,900.26 and attaching a table of post-judgment interest that accrued from April 13, 2015, the date of the Colorado judgment, through May 3, 2022.

Believe commenced this adversary proceeding by filing its complaint on May 18, 2022. (Doc. No. 1.) In the complaint, Believe summarized its relationship with Cloverleaf and Patterson; it also attached the Colorado judgment and cited it extensively. The complaint contains two counts. In Count I, Believe seeks a finding of nondischargeability for its claim under 11 U.S.C. § 523(a)(2)(A) "as evidenced by the [Colorado] Judgment against the Debtor." (*Id.* at 5.) In Count II, Believe seeks a finding of nondischargeability under 11 U.S.C. § 523(a)(6), also "as evidenced by the Judgment entered against the Debtor." (*Id.* at 6.) Paragraph 5 of the complaint, an introductory paragraph in the Jurisdiction section, contains a reference to objecting to Patterson's discharge under 11 U.S.C. § 727. (*Id.* at 2.) No other part of the complaint, including the attached Colorado judgment, contains any reference to seeking relief under Section 727.

Patterson filed his amended motion to dismiss on July 18, 2022. Patterson seeks dismissal of Count I on the basis that Believe failed to plead "any of the five required elements related to misrepresentation of facts which were ever made by Defendant." (Doc. No. 10 at 2.) Similarly, Patterson seeks dismissal of Count II because it contains no allegations of a deliberate or intentional injury:

6

> Nothing in Plaintiff's Complaint makes any reference to Defendant's intentions to harm Plaintiff. In fact, Plaintiff cannot assert such facts because it was only due to Plaintiff's late delivery of product that rendered Defendant unable to resell the product. This is a breach of contract case, with disputed liability that Plaintiff is trying to morph into a non-dischargeability action.

(*Id.* at 3.)

Believe opposes Patterson's motion in all respects. Believe emphasizes that the Colorado judgment resulted from specific findings of fact that Cloverleaf and Patterson intended to deprive Believe permanently of money that belonged to it. The Colorado state court explicitly concluded that Cloverleaf and Patterson committed theft under Colo. Rev. Stat. § 18-4-401 and that Believe was entitled to treble damages under Colo. Rev. Stat. § 18-4-405. On this basis, Believe argues that the Colorado state court already established all of the elements necessary to prove fraud for purposes of Section 523(a)(2)(A) and willful and malicious injury for purposes of Section 523(a)(6). With the substantive elements for nondischargeability having been established in state court, Believe asserts that it has pled those same elements in its complaint, "either directly or by reference to the underlying Colorado Judgment." (Doc. No. 11 at 3.)

### III. DISCUSSION

#### A. *Motions to Dismiss Generally*

The standard under Civil Rule 12(b)(6) is well known. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and

7

plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). "We are required to construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff. Nevertheless, we need not accept as true any conclusory legal allegations that do not include specific facts necessary to establish the cause of action. The plaintiff's complaint instead must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016) (internal quotation marks and citations omitted).

The Court also must review the principles governing the documents that the parties have filed so far in the record. "In addition to the allegations in the complaint, the court may also consider other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice." *Wyser-Pratte Mgmt. Co. v. Telxon Corp.*, 413 F.3d 553, 560 (6th Cir. 2005) (citations omitted). "While documents integral to the complaint may be relied upon, even if they are not attached or incorporated by reference, it must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." *Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 797 (6th Cir. 2012) (internal quotation marks and citation omitted). Applying these principles, the Court has considered the Colorado judgment, Patterson's schedules, and Believe's amended proof of claim. The Colorado judgment, attached to the complaint, by far is the most important document. The findings that the state court placed in the judgment form a substantial part of Believe's complaint. Believe integrated the Colorado judgment by reference and cited to it extensively. Patterson has not disputed that the Colorado judgment, on its face, says what it says; or that the copy of the judgment that Believe attached to

the complaint is authentic. The Court thus can consider the Colorado judgment as integral to the complaint. Once a document is considered integral to a complaint, undisputed information in it can support the legal sufficiency of a claim as if that information had been pled in the complaint directly. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.");[6] Fed. R. Bankr P. 7010; *see also Watermark Senior Living Ret. Communities, Inc. v. Morrison Mgmt. Specialists, Inc.*, 905 F.3d 421, 426 (6th Cir. 2018) (considering a contract, trial motions, a trial transcript, and a jury verdict without the need to convert a motion to dismiss to a motion for summary judgment); *Plassman v. City of Wauseon*, 85 F.3d 629 (6th Cir. 1996) (finding that review of state-court proceedings during a motion to dismiss was permitted and noting that "any federal court may take judicial notice of the proceedings in other courts of record") (citation omitted); *Burke v. Radiant Logistics Glob. Servs., Inc.*, No. 08-10581, 2008 WL 2094919, at *3 n.2 (E.D. Mich. May 16, 2008) ("[A] court does not exceed the permissible bounds of Rule 12(b)(6) by considering records and orders from other judicial proceedings, particularly where the complaint itself makes reference to these other proceedings.") (citations omitted).

### B. Fraud and 11 U.S.C. § 523(a)(2)(A)

The Court next turns to the legal sufficiency of Count I. Under 11 U.S.C. § 523(a)(2)(A), a discharge in a Chapter 7 case will not extend to any debt "for money, property, services, or an

---

[6] "The Sixth Circuit has not defined 'written instrument' within the context of Rule 10(c)." *LaGuardia v. Designer Brands Inc.*, No. 2:20-CV-2311, 2020 WL 6280910, at *4 (S.D. Ohio Oct. 27, 2020) (citation omitted). The Supreme Court, however, has implied that a legal brief attached as an exhibit to a habeas corpus petition counted as a written instrument. *See Dye v. Hofbauer*, 546 U.S. 1, 4 (2005) (citing Civil Rule 10(c)). "We need not articulate a comprehensive definition of 'written instrument,' because, whatever the boundaries of the definition, if it includes a brief it must include formal judicial decisions." *Ross v. Williams*, 950 F.3d 1160, 1169 (9th Cir.), *cert. denied sub nom. Daniels v. Ross*, 141 S. Ct. 840 (2020).

9

extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." Patterson's motion focuses on the elements for misrepresentation, which the Court agrees are missing. Neither the amended complaint nor the Colorado judgment reference any sort of representation. The closest allegation is that Patterson "attempted to conceal the payments by the schools." (Doc. No. 1-1 at 5 ¶ 10(b).) However, the Colorado judgment on which Believe relies did find fraud. An exception to discharge based on actual fraud does not necessarily require any misrepresentation:

> "Actual fraud" has two parts: actual and fraud. The word "actual" has a simple meaning in the context of common-law fraud: It denotes any fraud that involves moral turpitude or intentional wrong. "Actual" fraud stands in contrast to "implied" fraud or fraud "in law," which describe acts of deception that may exist without the imputation of bad faith or immorality. Thus, anything that counts as "fraud" and is done with wrongful intent is "actual fraud."

*Husky Int'l Elecs., Inc. v. Ritz*, 578 U.S. 356, 360 (2016) (term "actual fraud" includes forms of fraud, like a fraudulent conveyance, that can be effected without a false representation).

Here, the findings in the Colorado judgment contain enough information about Patterson's conduct to establish a plausible claim for fraud. By way of the Colorado judgment, Believe has pled that Patterson obtained funds that he knew were sales proceeds that belonged to Believe. Patterson generated sales, concealed the sales from Believe, and then maintained control of the sales proceeds when Believe learned of the sales and requested the money. *Cf., e.g., Nat'l Union Fire Ins. Co. of Pittsburgh v. Krause (In re Krause)*, 526 B.R. 768, 777 (N.D. Ill. 2014) (Section 523(a)(2) applied to intentional concealment of a property sale that would have accelerated repayment of a construction loan); *Miller v. Bauer (In re Bauer)*, 290 B.R. 568, 580 (Bankr. S.D. Ohio 2003) (finding that Section 523(a)(2) applied where "Defendant engaged in a combination

10

of misrepresentations and false impressions to hide and dissipate the [divorce] settlement proceeds before the Plaintiff could protect her interests through judicial means"); *Conseco v. Howard (In re Howard)*, 261 B.R. 513, 519 (Bankr. M.D. Fla. 2001) (Section 523(a)(2) applied to intentional concealment of sales proceeds). Believe plausibly has pled a pattern of conduct that would allow the Court to draw a reasonable inference that Patterson is liable to Believe for fraud. Whether the Colorado judgment and the proceedings that led to it would suffice to establish collateral estoppel is not before the Court, and the Court expresses no opinion on that issue. For now, the Court concludes only that Count I of the adversary complaint is legally sufficient. The Court accordingly will deny Patterson's motion with respect to Count I.

### C. Willful and Malicious Injury Under 11 U.S.C. § 523(a)(6)

The Court now will assess the legal sufficiency of Count II. Pleading nondischargeability under Section 523(a)(6) for willful and malicious injury requires pleading both willfulness and malice. *See MarketGraphics Research Group, Inc. v. Berge (In re Berge)*, 953 F.3d 907, 916 (6th Cir. 2020), *reh'g denied* (May 6, 2020), *cert. denied sub nom. MarketGraphics Rsch. Grp., Inc. v. Berge*, 141 S. Ct. 1057, 208 L. Ed. 2d 524 (2021). "The word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998) (holding that debts arising from recklessly or negligently inflicted injuries fail under Section 523(a)(6)). The term "malicious" in Section 523(a)(6) can refer to conscious disregard of duty, actions taken with no just cause or excuse, or conduct motivated by personal hatred, spite, or ill will. *See Berge*, 953 F.3d at 915 (citing *Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006)) (other citations omitted). "Unlike willful conduct, malicious conduct typically does not require a showing of specific intent to harm another." *Id.* (internal quotation marks and citations omitted).

11

"[U]nless the actor desires to cause consequences of his act, or believes that the consequences are substantially certain to result from it, he has not committed a 'willful and malicious injury' as defined under § 523(a)(6)." *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 464 (6th Cir. 1999) (citations omitted); *accord Rice v. Morse (In re Morse)*, 524 B.R. 774, 795 (Bankr. E.D. Tenn. 2015) (citations omitted).

By incorporating the Colorado judgment into the complaint, Believe successfully has pled the necessary elements under Section 523(a)(6). Believe has pled that Patterson knew that the sales proceeds that he generated belonged to it but chose to conceal that the sales occurred. *Cf., e.g., Quality Car and Truck Leasing, Inc. v. Adkins (In re Adkins)*, 567 B.R. 501, 510 (Bankr. S.D.W. Va. 2017) (active concealment of sales proceeds led to willful and malicious injury under Section 523(a)(6)); *Automotive Finance Corp. v. Miles (In re Miles)*, No. 05-14055-WHD, 2007 WL 7141214, at *3 (Bankr. N.D. Ga. Jan. 10, 2007) (same). Patterson chose concealment, according to Believe, because he intended to deprive Believe of the money permanently. Patterson's refusal to pay Believe what he owes it violated his contractual duty with no just cause or excuse and directly caused financial injury. As with Count I, Believe for now has not raised the issue of collateral estoppel, and the Court is not considering the Colorado judgment as evidence. Nor is the Court ruling on any defense, such as just cause or excuse, at this time. For purposes of Civil Rule 12(b)(6), Believe has done enough to plead circumstances that plausibly could establish nondischargeability under Section 523(a)(6). The Court accordingly will deny Patterson's motion with respect to Count II.

**IV. CONCLUSION**

For all of the foregoing reasons, the Court will grant Patterson's motion to dismiss (Doc. No. 10) in part with respect to any allegations under 11 U.S.C. § 727 but will deny it with respect to Counts I and II of the adversary complaint. A separate order will follow.

# # #